UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NICOLE M. LINDNER o/b/o N.M.R.,

               Plaintiff,

-vs-

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
               Defendant.

**No. 1:13-CV-01058 (MAT)
DECISION AND ORDER**

---

## I. Introduction

Represented by counsel, Nicole M. Lindner ("plaintiff") has brought this action on behalf of her infant daughter ("N.M.R.") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. Procedural History

The record reveals that on October 28, 2010, plaintiff filed an application for SSI benefits on behalf of N.M.R. (d/o/b July 14, 1997), alleging disability as of October 1, 2005. Plaintiff's application was denied, and she requested a hearing, which was held before administrative law judge Bruce Mazzarella ("the ALJ") on May 16, 2012. The ALJ issued an unfavorable decision on July 17, 2012. The Appeals Council denied review of that decision. This timely action followed.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

**III. Summary of Administrative Transcript**

    **A.   Medical Evidence**

N.M.R.'s treatment records reflect diagnoses of attention deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), and asthma. Psychologist Sandra Jensen, Ph.D. completed a child psychiatric evaluation on January 5, 2011. N.M.R. reported to Dr. Jensen that she failed seventh grade "because she never did her homework." T. 267. N.M.R. reported that currently [] school [was] going well." Id. On mental status examination, N.M.R. demonstrated coherent and goal-directed thought processes; flat affect and dysthymic mood; clear sensorium; orientation to person, place, and time; intact and age-appropriate attention, concentration, and recent and remote memory skills; cognitive functioning in the average range; and poor insight and judgment. Dr. Jensen opined that N.M.R. was "capable of doing all activities of daily living at age-appropriate levels, but does not do them out of defiance primarily." T. 270. According to Dr. Jensen, N.M.R. was "capable of attending, following, and understanding age-appropriate directions, completing age-appropriate tasks, adequately maintaining appropriate social behavior, responding appropriately to changes in environment, learning in accordance to cognitive

2

functioning, asking questions and requesting assistance in an age-appropriate manner, being aware of danger and taking needed precautions, and interacting adequately with peers and adults if she is kept on her medication." T. 270-71.

Dr. Donna Miller completed a pediatric examination on January 5, 2011. Results of the examination were normal, and Dr. Miller opined that plaintiff could "participate in all age-appropriate activities," but should avoid exposure to dust and tobacco. T. 276.

Dr. J. Meyer completed a childhood disability evaluation on January 13, 2011. Dr. Meyer found that N.M.R. had an impairment or combination of impairments that was severe, but that did not meet, medically equal, or functionally equal the listings. Specifically, Dr. Meyer found that N.M.R. had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others. Dr. Meyer found no limitations in the remaining domains.

In a February 2011 medical statement from Genesee Transit Pediatrics, N.M.R.'s pediatrician assessed N.M.R. as having moderate limitations in attention; extreme limitations in impulsiveness, hyperactivity, and age-appropriate social and personal functioning; and mild limitations in maintaining concentration, persistence, or pace. The assessment also found extreme limitations in personal functioning (i.e., self-care tasks such as feeding, dressing, and bathing) and attending and

3

completing tasks, and moderate limitations in "caring for self" (i.e., coping with stress and fulfilling emotional needs).

N.M.R. attended counseling at Child & Adolescent Treatment Services ("CATS") from December 2011 through March 2012. Treatment notes from Brittany Brooks, LMSW and psychiatrist Dr. Seth Graham Dewey note that plaintiff and N.M.R. reported issues with academic performance and family conflict including fights between them. The treatment notes also document that N.M.R.'s stepmother took her off of ADHD medication for a period of time from June 2011 through February 2012. N.M.R. was ultimately discharged from treatment at CATS due to failure to attend appointments.

**B.    Education Records**

In 2009-2010, when N.M.R. was in seventh grade, she received failing grades in all subjects except music and art. Teachers noted a lack of effort, failure to complete assignments, and poor attitude toward school. Upon repeating the grade in 2010-2011, N.M.R.'s grades improved; she received passing grades in all but physical education. It was noted that some of her assignments were missing, but that she "worked hard to turn in homework" in math, and her academic support teacher, Jade Obrochta, noted that she "had a great year." T. 199. In 2011-2012, N.M.R.'s performance declined somewhat; as of the second quarter, she was failing three out of eight classes. N.M.R.'s academic record also reflects three in-school suspensions during fall 2011, and discipline for defiant behavior several times from September 2011 through January 2012. It

4

appears from the record, and from the parties' submissions, that this time period coincided with N.M.R. being unmedicated for ADHD.

In a November 2010 teacher questionnaire, N.M.R.'s special education teacher, Ms. Obrochta, reported that she had taught N.M.R. for five periods (200 minutes) per day for 13 months. In the domain of acquiring and using information, Ms. Obrochta rated N.M.R. as having an obvious problem comprehending and doing math problems, but no problem or only slight problems in other areas of this domain. Ms. Obrochta noted no "serious" or "very serious" problems in this domain. T. 153. She noted that she had seen an improvement in N.M.R. in "many of the skills noted above." Id. In the domain of attending and completing tasks, Ms. Obrochta noted a serious problem in working without distracting herself or others, and obvious problems in refocusing to task when necessary, changing from one activity to another without being disruptive, organizing her things, and completing class/homework assignments. Ms. Obrochta noted slight or no problems in the remaining areas of this domain. Ms. Obrochta stated that she had seen "great improvement in daily work completing and being actively engaged in class." T. 154.

In the domain of interacting and relating with others, Ms. Obrochta noted a serious problem in making and keeping friends, and obvious problems in expressing anger and asking permission appropriately, and respecting/obeying adults in authority. Otherwise, Ms. Obrochta noted no problems in this domain. Ms. Obrochta stated that it had not been necessary to implement

5

behavior modification strategies for N.M.R., although she did note that it may become necessary to "create [a] program for obstinance, disrespect, and excessive talking" and reported that N.M.R. often instigated negative social interactions with peers by telling them to "shut up" or calling them stupid. T. 155. Ms. Obrochta reported no problems in moving about and manipulating objects.

In the domain of caring for herself, Ms. Obrochta noted obvious problems handling frustration appropriately, being patient when necessary, using good judgment regarding personal safety and dangerous circumstances, identifying and appropriately asserting emotional needs, responding appropriately to changes in her own mood, and using appropriate coping skills to meet the daily demands of the school environment. Otherwise, Ms. Obrochta noted slight or no problems in this domain. In the domain of medical conditions and medications/health and physical well-being, Ms. Obrochta stated that N.M.R. was resistant to taking her ADHD medicine.

School psychologist Erica Gregoire completed a psychological evaluation report in July 2010. Ms. Gregoire found N.M.R.'s cognitive ability to be average, at the 53rd percentile of overall ability, and her reading, written language and math skills to be age-appropriate. Ms. Gregoire noted that N.M.R. demonstrated some difficulty in math reasoning, but that her 21st percentile score "should be interpreted with caution, as [N.M.R.]'s attentiveness began to dwindle significantly during the administration of that subtest." T. 258. In October 2010, Ms. Gregoire evaluated N.M.R.'s

social/emotional functioning, and found that this aspect of functioning "may be impacting [N.M.R.]'s academic success." T. 248.

   C.   **Testimonial Evidence**

Plaintiff testified that she shared joint custody of N.M.R. with N.M.R.'s father. According to plaintiff, she had had full custody until April 2011, when she and N.M.R. had a fight in which plaintiff hit N.M.R. in the face and the two "hurt each other." T. 16-17. After that fight, plaintiff had supervised visitation of N.M.R. for about a month, and then plaintiff and N.M.R.'s father began sharing joint custody.

Plaintiff testified that, at the time of the hearing, N.M.R. attended eighth grade and had a section 504 plan, which allowed her "special help in testing areas" and "special help during class time" in the areas of math, social studies, and English language arts. T. 22-23. According to plaintiff, N.M.R. would have to repeat eighth grade because "[s]he wasn't on her Adderall for a while, and she was doing very poorly with her grades[.]" T. 23. Plaintiff testified that N.M.R. had been taken off of Adderall by her stepmother, but that otherwise she had taken the medication for about five years. Plaintiff testified that she gave N.M.R. the medication before school and that it usually wore off by the end of the day. Plaintiff stated that N.M.R. functioned "pretty well on [the Adderall], but when she [was] not on it, or when it [wore] off – everything just changes." T. 25. Plaintiff testified that N.M.R. had friends at school and in her neighborhood.

7

Plaintiff testified that N.M.R. began cutting herself about two months before the hearing, enough to make herself bleed but not to require stitches. According to plaintiff, N.M.R. stated "a lot of times she don't want to be here." T. 39. Plaintiff testified that N.M.R. had a bad temper, and that she sometimes "[threw] expensive things," such as a DVD player. T. 41. Plaintiff testified that N.M.R.'s asthma was under control with medication.

N.M.R. testified that she liked school "[b]ecause [her] friends [were] there." T. 47. She testified that she did not do chores, because she "just [did not] get assigned to do them." T. 48. N.M.R. stated that she had not been on her ADHD medication in the beginning of the school year, and as a result she was behind and had to repeat the year.

**IV. Applicable Law**

    **A. Standard of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**B. Legal Standard for Disability Claims of Children**

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). Pursuant to this statutory dictate, the Social Security Administration has promulgated, by regulation, a three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of a disability. Encarnacion ex rel. George v. Astrue, 586 F.3d 72, 75 (2d Cir.2009) (citing 20 C.F.R. § 416.924 et seq.). Under this analysis, the plaintiff must show that: (1) the child was not engaged in substantial gainful activity; (2) the child had a "severe" impairment or combination of impairments; and (3) the child's impairment(s) met, medically equaled, or functionally equaled the severity of a listed impairment. 20 C.F.R. § 416.924. At the third step, "[f]or a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" Encarnacion, 568 F.3d at 75 (quoting 20 C.F.R. § 416 .926a(a)). A child's limitations are evaluated in the context of the following six domains of functioning:

(1) acquiring and using information;
(2) attending and completing tasks;
(3) interacting and relating with others;

9

(4) moving about and manipulating objects;
(5) caring for oneself; and
(6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

**V.  The ALJ's Decision**

The ALJ found, at the first step, that N.M.R. was an adolescent (see 20 C.F.R. § 416.926a(g)(2)) who was not engaged in substantial gainful activity. At the second step, the ALJ found that N.M.R. suffered from three severe impairments: ADHD, learning disorder, and asthma. At the third step, the ALJ found that N.M.R. did not suffer from an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, 416.926). In so finding, considered N.M.R.'s functioning in the six domains, and assessed no limitations or less than marked limitations in each. T. 67-72.

**VI.  Discussion**

Plaintiff contends that the ALJ erred in assessing N.M.R.'s period of noncompliance with ADHD medication. Plaintiff also argues that the ALJ erred in finding that N.M.R. had less than marked limitations in the domains of acquiring and using information, caring for yourself, attending and completing tasks, and interacting and relating with others.

    **A.  N.M.R.'s Period of Noncompliance With ADHD Medication**

Plaintiff contends that the ALJ improperly evaluated N.M.R.'s functioning during the period of time in which she was not taking

10

ADHD medication. The record indicates that during that time frame, from approximately June 2011 through February 2012, N.M.R.'s stepmother took her off of the medication because she did not believe it was necessary. N.M.R.'s functioning and academic performance improved while she was medicated for ADHD, but while she was not, her academic performance declined and she exhibited behavioral problems for which she was disciplined. Plaintiff's apparent argument is that if this period of time in which N.M.R. was unmedicated had been considered properly, a finding of disability would have resulted.

As the Commissioner points out, this time period spanned only nine months, not the 12 months required to establish disability for purposes of the regulations. See 42 U.S.C. § 1382(a)(3)(C)(I). Therefore, even if N.M.R.'s functioning during that time frame functionally equaled a listed impairment, this isolated time frame by itself was not enough to establish disability. Additionally, as discussed below, substantial evidence supports the ALJ's decision that, considering all of the evidence throughout the *entire time period* relevant to N.M.R.'s SSI application, N.M.R. did not suffer from disabling impairments. This is true even though N.M.R. demonstrated declining academic performance and disciplinary problems while she was not medicated for ADHD.

Plaintiff argues that the reasoning of SSR 82-59 should apply to the analysis of this issue. That ruling, entitled "Failure to Follow Prescribed Treatment," addresses a scenario in which a

claimant, *who suffers from a disabling impairment*, fails to follow a prescribed treatment regimen that would restore his or her ability to work. SSR 82-59 is not applicable to the analysis of this case, because the ALJ's finding that N.M.R. did not suffer from disabling impairments was supported by substantial evidence. The fact that N.M.R. was not medicated for ADHD for approximately nine months does not alter the Court's review of the ALJ's decision with regard to plaintiff's remaining contentions.

**B.  The ALJ's Assessment of N.M.R.'s Limitations**

**1.  Acquiring and Using Information**

The ALJ found that N.M.R. had less than marked limitations in acquiring and using information. This domain considers how well a child acquires or learns information, and how well the child uses the information that was learned. 20 C.F.R. § 416.926a(g). In the adolescent age range, examples of limitations in this domain include failure to demonstrate understanding of words relating to space, size, or time; inability to rhyme words or the sounds in words; difficulty recalling things learned in school yesterday; difficulty solving math problems; talking in only short, simple sentences; and difficulty explaining one's meaning. Id.

N.M.R. was assessed as having a full-scale IQ score of 101, and her cognitive functioning was found in the average range upon evaluation by her school psychologist. Ms. Obrochta's teacher questionnaire, which the ALJ specifically cited, found that in this domain N.M.R. had only one "obvious" problem, in comprehending and

doing math problems. In all other areas of functioning relevant to this domain, Ms. Obrochta rated N.M.R. has having no problem or only slight problems. The ALJ was entitled to give weight to this opinion, which came from a teacher who spent approximately 200 minutes per day with N.M.R. for 13 months. See Conlin ex rel. N.T.C.B. v. Colvin, 2015 WL 3961167, *8 (W.D.N.Y. June 29, 2015) (noting that "teacher questionnaires are considered valid 'other source' opinions" and that an ALJ "has full discretion to determine the appropriate weight to accord" such opinions). Consulting physician Dr. Meyer also concluded that N.M.R. had less than marked limitations in this domain. Substantial evidence thus supports the ALJ's finding regarding N.M.R.'s functioning in acquiring and using information.

### 2. Caring for Yourself

The ALJ found that N.M.R. had no limitations in caring for herself, giving no specific explanation for this finding. The domain of caring for yourself relates to how well an individual "maintain[s] a healthy emotional and physical state," including how well one gets "physical and emotional wants and needs met in appropriate ways, . . . cope[s] with stress and changes in . . . environment," and whether one "takes care of [his] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). In the adolescent age range, limitations in this domain include limitations in bathing and dressing oneself, self-soothing behaviors, self-injurious behaviors, disturbance in eating or

13

sleeping patterns, and failure to spontaneously pursue enjoyable activities or interests. Id.

Prior to his discussion of each discrete domain, the ALJ conducted a thorough review of the record evidence. T. 64-67. The ALJ's failure to explicitly state his reasons for his finding in this domain was not error under these circumstances, because the ALJ's "discussion of the evidence [in the context of the entire decision] allows a . . . subsequent reviewer to follow the [ALJ]'s reasoning." Abdulsalam v. Comm'r of Soc. Sec., 2014 WL 42065, *5 (N.D.N.Y. Feb. 4, 2014).

The Court finds, however, that the record evidence supported a finding that N.M.R. had some limitation, which was less than extreme, in the domain of caring for yourself. N.M.R.'s pediatrician found that she had extreme limitations in personal functioning and moderate limitations caring for herself. Additionally, N.M.R.'s mother testified that she had recently engaged in self-destructive cutting behavior. Ms. Obrochta found that N.M.R. had "obvious" problems in handling frustration appropriately, being patient when necessary, using good judgment regarding personal safety and dangerous circumstances, identifying and appropriately asserting emotional needs, responding appropriately to changes in her own mood, and using appropriate coping skills to meet the daily demands of the school environment. However, Ms. Obrochta did not find any "serious" or "very serious" problems in the domain of caring for herself.

Considering the above evidence, the record does not substantially support the ALJ's finding that N.M.R. had no limitation in this domain. However, even if N.M.R. suffered a marked limitation in this domain, it would not change the outcome of the ALJ's decision because she did not suffer marked limitations in any of the remaining domains, and the evidence does not support a finding of an extreme limitation in the domain of caring for yourself. Thus, to the extent that the ALJ erred in finding no limitations in this domain, that error was harmless. See, e.g., Grant v. Colvin, 2014 WL 4667327, *15 (S.D.N.Y. Sept. 19, 2014) (finding that ALJ's error in deciding one domain was "ultimately harmless because the ALJ's determination that [claimant] did not have marked impairments in either of the other two functional categories or suffer from repeated episodes of decompensation [was] supported by the record").

### 3. Attending and Completing Tasks

The ALJ found that N.M.R. had less than marked limitations in attending and completing tasks, noting N.M.R.'s ADHD diagnosis and the fact that she performed better while medicated for that condition. The domain of attending and completing tasks looks at an individual's ability to "focus and maintain [] attention, . . . begin, carry through, and finish [] activities, including the pace at which [one] perform[s] activities and the ease with which [one] change[s] them." 20 C.F.R. § 416.926a(h). Limitations in this domain include being easily startled, distractive, or overreactive

to sounds, sights, movements, or touch; failure to complete activities of interest; repeatedly becoming sidetracked from activities or frequent interruption of others; becoming easily frustrated and giving up on tasks; and requiring extra supervision to keep engaged in an activity. Id.

Although N.M.R. did have issues with concentration associated with her ADHD, the evidence supports the ALJ's conclusion that N.M.R.'s performance was improved with medication. The record indicates that, when she was appropriately medicated and when she worked at completing assignments and turning in homework, N.M.R.'s performance improved quite significantly. Ms. Obrochta opined that N.M.R. had a serious problem in working without distracting herself or others, and obvious problems in refocusing to task when necessary, changing from one activity to another without being disruptive, organizing her things, and completing class/homework assignments. Ms. Obrochta found that N.M.R. had no limitations, however, in paying attention when spoken to directly, focusing long enough to finish an assignment, carrying out instructions, waiting to take turns, and working at a reasonable pace and finishing on time, and only a slight problem in completing work accurately without careless mistakes. Thus, Ms. Obrochta's assessment supports a finding that N.M.R. had some limitations in this domain, but not marked limitations. Dr. Meyer also concluded that N.M.R. had less than marked limitations in this domain. The record thus

substantially supports the ALJ's finding as to N.M.R.'s limitations in this domain.

### 4. Interacting and Relating With Others

The ALJ found that N.M.R. had less than marked limitations in interacting and relating with others. The domain of interacting and relating with others considers a child's ability to "initiate and sustain emotional connections with others, develop and use the language of [her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Examples of limited functioning applicable to adolescents include withdrawing from people the child knows, having difficulty in communication, and difficulty speaking intelligibly or with fluency. Id. The regulations' focus in this domain is thus on the adolescent's ability to communicate with, and interact appropriately with, both peers and adults.

In this domain, Ms. Obrochta opined that N.M.R. had a serious problem in making and keeping friends, and obvious problems in expressing anger and asking permission appropriately, and respecting/obeying adults in authority. Otherwise, Ms. Obrochta noted no problems in the remaining eight listed areas of this domain (e.g., seeking attention and asking permission appropriately, relating experiences and telling stories, using appropriate language, etc.). The Court notes that both N.M.R. and her mother testified that she had friends at school and in her

neighborhood, and her school counselor in June 2010 noted that she was making "slow progress" in, among other things, "interacting with peers and adults." T. 266. Additionally, Dr. Meyer found that N.M.R. had less than marked limitations in interacting and relating with others. The record thus substantially supports the ALJ's finding in this domain.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 12) is denied, and the Commissioner's cross-motion (Doc. 16) is granted. The ALJ's finding that N.M.R. was not disabled during the relevant period is supported by substantial evidence in the record, and accordingly, the complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated: September 2, 2015
Rochester, New York.